87 N.Y.2d 772 (1996)
665 N.E.2d 167
642 N.Y.S.2d 597
The People of the State of New York, Respondent,
v.
Richard McNair, Appellant.
Court of Appeals of the State of New York.
Argued February 14, 1996
Decided April 4, 1996.
David Goodman, Public Defender of Dutchess County, Poughkeepsie (David Steinberg of counsel), for appellant.
William V. Grady, District Attorney of Dutchess County, Poughkeepsie (Bridget Rahilly Steller of counsel), for respondent.
Judges SIMONS, TITONE and SMITH concur with Judge CIPARICK; Chief Judge KAYE dissents and votes to affirm in a separate opinion in which Judges BELLACOSA and LEVINE concur.
*773 CIPARICK, J.
In People v Letterlough (86 N.Y.2d 259), this Court announced a set of guiding principles to determine whether conditions of probation are authorized by the probation statute's catch-all provision (see, Penal Law § 65.10 [2] [l]). Based on these interpretive guidelines, we now invalidate the extra-statutory probationary condition of electronic monitoring at issue in this case.
On October 27, 1993, defendant was arrested for felony counts of driving while intoxicated and aggravated unlicensed *774 operation of a motor vehicle in the first degree. Pursuant to a plea agreement, defendant pleaded guilty to a superior court information charging him with driving while intoxicated as a felony and was sentenced by County Court to a five-year term of probation, to include six months of incarceration in county jail and one year of electronic monitoring. County Court also ordered defendant to attend a victim impact panel and pay a fine and administrative fees in the amount of $1,155. At sentencing, defendant voiced an objection to the electronic monitoring.
The Appellate Division affirmed defendant's sentence, rejecting defendant's argument that the condition of electronic monitoring was beyond County Court's power to impose (People v McNair, 212 AD2d 550). A Judge of this Court granted leave to appeal and we now reverse.
Analysis of the issue on appeal  whether electronic monitoring is a statutorily authorized condition of probation  begins and ends with People v Letterlough (86 N.Y.2d 259, supra). In Letterlough, this Court invalidated the scarlet-letter condition of probation that required an individual convicted of driving while intoxicated to affix a fluorescent sign to the license plate of his car bearing the words, "CONVICTED DWI." The Court cited two separate reasons for striking down the probationary condition as exceeding the sentencing court's authority under Penal Law § 65.10 (2) (l). First, the condition of probation was not fundamentally rehabilitative, but was predominantly punitive and deterrent. Second, the condition could not be imposed absent specific legislative authorization because of the difficult policy choices involved and the need for uniform State-wide standards. For these very reasons, the probationary condition of electronic monitoring at issue in this case similarly exceeds the court's authority under the Penal Law.
Penal Law § 65.10 (2) (l) permits a sentencing court to fashion probationary conditions "reasonably related to * * * rehabilitation." In Letterlough, we rejected an expansive reading of section 65.10 (2) (l) and held that given the probation statute's "singular focus" on rehabilitation, the catch-all provision only permits probationary conditions that are "fundamentally `rehabilitative' in the sense of that word that distinguishes it from the societal goals of punishment or deterrence" (86 NY2d, at 265, supra). If the condition of probation is not "fundamentally *775 rehabilitative," we held, it is invalid notwithstanding any incidental rehabilitative effects.[*]
A condition of electronic monitoring requires the defendant to wear an electronic device that transmits a signal to a central computer alerting the Probation Department when the defendant travels beyond a certain distance in violation of sentence restrictions. In an effort to demonstrate the rehabilitative purpose of the electronic monitoring in this case, the People rely on the sentencing court's statement that electronic monitoring is necessary to provide the court "reasonable assurance that you're going to comply with treatment, that you're going to recognize that you can't do this anymore." However, a reading of the entire relevant passage from the record reveals that the sentencing court was motivated by something other than rehabilitation. In response to defendant's objection to the condition of electronic monitoring, the court stated:
"[Y]ou have to earn society's trust not to drive a car and get drunk. And I looked at your record and you have three DWI's in your past. And so I have to assure myself that the world is safe from your driving. The only way I could do that is to either send you to state prison or to enter an arrangement like this where I have some reasonable assurance that you're going to comply with treatment, that you're going to recognize that you can't do this anymore. And between the time you get out of jail and the time they let you off the electronic monitor, if you are compliant with the terms of probation, then you will have earned that trust."
This case is thus remarkably similar to Letterlough in that the sentencing court's "true design was not to advance defendant's rehabilitation, but rather to `warn the public' of," or in this case protect the public from, "the threat presented by [defendant's] presence behind the wheel" (86 NY2d, at 266, supra). Because the sentencing court's true aims in this case were public safety and surveillance, not rehabilitation, Letterlough requires that the condition of electronic monitoring be invalidated.
*776 As the sentencing court itself stated, the electronic monitoring was imposed primarily to "assure [the court] that the world is safe from [defendant's] driving." This is plainly a public safety aim. According to Letterlough, questions of public safety, such as the "degree of threat this defendant posed to society," may not be considered in determining whether a condition of probation is proper under the catch-all provision (86 NY2d, at 265, supra). The promotion of public safety, while commendable, is not a "fundamentally rehabilitative" purpose and will not validate a condition of probation under Penal Law § 65.10 (2) (l) (see, Letterlough, 86 NY2d, at 269, supra ["the reference in the probation statute's catch-all provision to the lone goal of rehabilitation renders County Court's stated public safety motivation for imposing the special condition improper"]).
In tandem with the public safety aim of the electronic monitoring, the sentencing court also imposed this condition of probation to keep defendant under the Probation Department's surveillance. However, the use of electronic monitoring as a surveillance device serves the goal of specific deterrence by incapacitating defendant from drinking and driving, not the distinct goal of rehabilitation (cf., Kagehiro, Psycholegal Issues of Home Confinement, 37 St Louis U LJ 647 [1993] ["a home confinee convicted of DUI may be prevented from driving while drunk, but home confinement does not prevent drinking"]). If surveillance has any rehabilitative effect, it is only in the purely incidental sense of restricting defendant's mobility and thereby reducing his opportunity for illicit behavior.
Finally, the use of electronic monitoring raises a host of policy issues  penological, ethical, technological, and fiscal  that are the province of the Legislature, not the Judiciary (see, People v Letterlough, 86 N.Y.2d 259, 267, supra). While the People attempt to downplay the need for legislative involvement by citing defendant's failure to demonstrate any abuses associated with the particular probationary program in this case, a ruling upholding electronic monitoring would inevitably lead to the uneven and intrusive application of the electronic monitoring technology as courts around the State experiment with this unregulated sentencing tool. Under the circumstances, a sentencing alternative such as electronic monitoring requires legislative enactment of uniform standards to regulate its use (cf., Letterlough, 86 NY2d, at 267, supra; see generally, Burns, Electronic Home Detention: New Sentencing Alternative Demands Uniform Standards, 18 J Contemp L 75 [1992]).
*777 In light of this analysis, we do not reach defendant's arguments that the sentencing court improperly delegated sentencing power to the Probation Department or that the condition of electronic monitoring constituted an extension of imprisonment in violation of Penal Law § 60.01 (2) (d).
Accordingly, the order of the Appellate Division should be reversed, the plea vacated and the case remitted for further proceedings on the superior court information.
Chief Judge KAYE (dissenting).
Convicted for the third time of the felony of driving while intoxicated (Vehicle and Traffic Law § 1192), defendant  an admitted alcoholic  received a sentence of five years' probation, the first six months of which were to be served in jail, followed by a one-year period of electronic home monitoring. Because we conclude that the electronic monitoring imposed was well within the sentencing court's statutory discretion under Penal Law § 65.10, we respectfully dissent.
Penal Law § 65.10 (1) states as a general proposition that conditions of probation "shall be such as the court, in its discretion, deems reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him to do so" (Penal Law § 65.10 [1]). Implicit in this language are two important principles. First, as we recently observed in People v Letterlough (86 N.Y.2d 259), a condition of probation must be primarily rehabilitative in nature  intended to assist a defendant in resisting the temptation to commit a crime once again. The second important principle, also derived directly from the language of the statute, is that the decision as to which combination of conditions to impose on a particular defendant is a matter of the sentencing court's sound discretion.
In accordance with these explicit statutory principles, Penal Law § 65.10 (2) lists a dozen or so different types of conduct which a court may order a defendant to perform or to refrain from doing as a condition of its sentence of probation. These include refraining from frequenting disreputable places, finding suitable employment, participating in an alcohol or substance abuse program, supporting dependents and making restitution (Penal Law § 65.10 [2] [b], [c], [e], [f], [g]). Recognizing, however, that none of these conditions  alone or in combination  is likely to do much good if ignored or evaded, the statute goes on to prescribe a variety of supervisory mechanisms that can be imposed in addition to the other conditions in an effort to insure compliance  for example, by having *778 a defendant report regularly to a probation officer or remain within the jurisdiction (Penal Law § 65.10 [3] [a], [b]).
That the above measures were not intended to be exclusive, but merely illustrative, is made pellucidly clear by Penal Law § 65.10 (2) (l), which permits courts to impose "any other conditions reasonably related to * * * rehabilitation." (Emphasis added.)
Plainly, the purpose of this broad catch-all provision is to provide sentencing Judges with flexibility to fashion additional conditions  not expressly listed in the statute  based on the particular rehabilitative needs and circumstances of the defendants before them. "In sentencing a defendant to probation, the court has open-ended authority under Penal Law § 65.10 (2) (l) to impose conditions which are `reasonably related to [defendant's] rehabilitation'" (People v Howland, 145 AD2d 866, 867). By reversing the order of the Appellate Division, the majority has, for all practical purposes, eliminated this flexibility and discretion.
Believing itself constrained by our recent decision in People v Letterlough (86 N.Y.2d 259), the majority concludes that the one-year electronic monitoring program imposed here exceeded the bounds of the court's discretion under Penal Law 65.10 (2) (l). As the majority asserts: "Analysis of the issue * * * whether electronic monitoring is a statutorily authorized condition of probation * * * begins and ends with People v Letterlough" (majority opn, at 774). This simply is not so.
Letterlough, decided only last year, deals with the different and far more draconian sanction of requiring a defendant to attach to the license plate of his car a large sign with fluorescent lettering reading "CONVICTED DWI." In vacating defendant's plea in that case, we noted that the court's "true design" in imposing the "CONVICTED DWI" sign as a condition of probation was not to rehabilitate defendant, but instead to punish and humiliate him by publicly disclosing the fact of his crime (86 NY2d at 266). Given this motive and noting that the "CONVICTED DWI" sign "is out of step with the various other devices specifically authorized [in the statute]," we concluded that the "punitive and deterrent nature of the disputed `scarlet letter' component of the [`CONVICTED DWI' sign] overshadows any possible rehabilitative potential" (id.).
The general rule to be drawn from Letterlough is that a court may not create its own probationary condition which is predominantly punitive in the sense that its punitive elements *779 overshadow its rehabilitative components. Conditions that are not primarily punitive in nature, however, are still authorized by the language of Penal Law § 65.10 (2) (l) and Letterlough does not diminish their availability or lawfulness.
It is beyond question that no such predominantly punitive condition is present here. The electronic monitoring device at issue was part of an integrated rehabilitative plan requiring defendant to abstain from purchasing or drinking alcohol, attend an accredited alcohol treatment program and avoid places associated with alcohol consumption such as a bar, tavern or liquor store. Utilized in conjunction with these conditions, the electronic monitoring was designed to allow defendant to remain in the privacy of his own home with his family  instead of in prison  while learning to control himself in the presence of alcohol (see, e.g., Burns, Electronic Home Detention: New Sentencing Alternative Demands Uniform Standards, 18 J Contemp L 75, 89-90 [1992]).
In sharp contrast to the fluorescent license plate sign, the only physical manifestation of the electronic monitoring is a small bracelet around defendant's ankle or wrist which sends an electronic signal notifying the Probation Department when he leaves his home without authorization (see, People v Ryan, 134 Misc 2d 343, 344-345 [describing Nassau County Electronic Home Detention Program]). By ordering defendant to wear such a device, the trial court clearly did not intend to humiliate him publicly. Nor is the electronic monitoring likely to "negate any positive effect derived from the imposition of [the] other therapeutic conditions" imposed to treat his addiction (Letterlough, 86 NY2d at 266). In fact, while noting that it would otherwise have imposed a prison sentence of up to four years in light of defendant's recidivism, the court explained at defendant's sentencing that only through electronic monitoring could it "have some reasonable assurance that you're going to comply with treatment, that you're going to recognize that you can't do this any more."
Moreover, unlike the "CONVICTED DWI" sign at issue in Letterlough, the electronic monitoring device used here is not different in kind from the remaining devices listed in Penal Law § 65.10 (see, Letterlough, 86 NY2d at 266). Like several of the conditions already authorized, such as reporting to a probation officer (Penal Law § 65.10 [3] [a]), not leaving the jurisdiction (see, Penal Law § 65.10 [3] [b]) and posting a bond (Penal Law § 65.10 [2] [j]), electronic monitoring simply insures that defendant complies with the other specified conditions by keeping the Probation Department informed about his whereabouts.
*780 Even more troubling, however, is the majority's expansive reading of Letterlough beyond its legal and factual particulars. Ignoring that Letterlough actually involved a highly unusual, "scarlet letter"-type probationary condition, the majority reasons that the only conditions that are acceptable under Letterlough are those that are exclusively  not merely primarily  rehabilitative. But as this Court in Letterlough readily conceded, many if not most of the probationary sentences already authorized by Penal Law § 65.10, such as requiring a probationer to make restitution or refrain from frequenting disreputable places, though unquestionably rehabilitative, have some "punitive and deterrent effects" as well (86 NY2d at 264-265). Thus, Letterlough cannot fairly be read to stand for the proposition that a probationary condition not mentioned in Penal Law § 65.10 is prohibited simply by virtue of the fact that it also serves as a punishment or specific deterrent.
As noted above, Penal Law § 65.10 (1) begins with the direction that the conditions of probation "shall be such as the court, in its discretion, deems reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him to do so." This language reflects the Legislature's commonsense understanding that without the aid of additional conditions to insure compliance with the court's order, attempts at rehabilitation are likely to be for naught. Boiled down to its essential features, a fluorescent license plate sign reading "CONVICTED DWI" is by no means "remarkably similar" (majority opn, at 775) to an unobtrusive electronic bracelet worn under defendant's clothing mainly in his own home, which was intended to assist defendant in his efforts at rehabilitation. By concluding that Letterlough prohibited the trial court's imposition of electronic monitoring in this case, the majority has effectively written the broad catch-all provision out of the statute. The argument that electronic monitoring could not be imposed without comprehensive legislative authorization (see, majority opn, at 776) belies not only what appears to be common practice throughout this State (see, People v Johnson, 187 AD2d 532; People v Ryan, supra), but also the language of Penal Law § 65.10 itself. The unfortunate consequence will be to deprive Judges of the discretion to fashion sentencing alternatives other than those explicitly mentioned in the statute  a discretion which the Legislature clearly intended sentencing courts to have.
Order reversed, defendant's plea vacated and case remitted to County Court, Dutchess County, for further proceedings in accordance with the opinion herein.
NOTES
[*] The converse of this rule, as we recognized in Letterlough, is that a condition of probation that is fundamentally rehabilitative will be upheld notwithstanding incidental punitive or deterrent effects (86 NY2d, at 264-265, supra). Thus, the dissent's concern that our holding limits permissible conditions of probation to those that are "exclusively  not merely primarily  rehabilitative" is unfounded (dissenting opn, at 780).